UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Gerald Sevigny**<br>    Plaintiff, | **COMPLAINT** |
| v. | **Jury Trial Demanded** |
| **Long View R.V., Inc.,**<br>& **Bank of the West Corporation**<br>    Defendants. | May 9, 2011 |

## COMPLAINT

### INTRODUCTION

1. This is a suit brought by a consumer regarding the purchase and sale of a recreational camper (the "Camper"). Plaintiff brings this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant Long View R.V., Inc. ("Long View") for engaging in illegal, unfair and deceptive actions related to the purchase and sale of the camper. The Plaintiff claims that Long View violated the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.* ("CUTPA"), the Connecticut Retail Installment Sales Finance Act, Conn. Gen. Stat. §§ 36a-770 *et seq.* ("RISFA"), the Connecticut Home Solicitation Sales Act, Conn. Gen. Stat. §§ 42-134 *et seq.* ("HSSA"), Article 2 of the Uniform Commercial Code ("UCC"), and the Connecticut Creditor Collection Practices Act, Conn. Gen. Stat. §§ 66-645 *et seq.* ("CCPA"). Defendant Bank of the West Corporation ("Bank of the West") retained the benefit of the retail installment sales contract for the purchase of the camper notwithstanding receiving written notice of the aforementioned violations, and it is also liable under TILA and RISFA  and pursuant to Conn. Gen. Stat. § 52-572g.  Plaintiff also

asserts a claim against Bank of the West for violation of the CCPA. Furthermore, Plaintiff lawfully revoked acceptance of the Camper or rescinded the retail installment sales contract involved in the transaction.

## PARTIES AND JURISDICTION

2. Plaintiff is a consumer and natural person residing in Brooklyn, Connecticut.

3. Long View is a Connecticut corporation that sells campers and recreational vehicles, and it maintains a permanent place of business in Windsor Locks, Connecticut.

4. Bank of the West Corporation is a California c that operates as a sales finance company.

5. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. This court has jurisdiction over Long View because it is a Connecticut corporation that regularly conducts business in this state.

7. This court has jurisdiction over Bank of the West because it regularly conducts business in Connecticut.

8. Venue in this court is proper, because the plaintiff resides in Connecticut, and the claims involve a transaction that occurred in Connecticut.

**LONG VIEW'S DECEPTIVE CONDUCT AND VIOLATIONS OF CUTPA, HSSA, AND TILA AT THE INCEPTION OF THE TRANSACTION**

9.     On or around February 19, 2011, Plaintiff attended a camper trade show in Springfield, Massachusetts where Long View was displaying recreation vehicles and campers.

10.     Plaintiff visited Long View's sales display and saw the Camper, which was a new 2011 Forest River Wildwood recreational camper (the "Camper") that had a manufacturer's suggested retail price of approximately $27,000 and was advertised for sale at $19,995.

11.     Plaintiff discussed his interest in the Camper with Paul, a Long View salesman, who offered to sell the Camper to Plaintiff.

12.     Plaintiff told Paul that he was interested in the Camper and that he would want to trade in his old camper (the "Trade-In"), Paul and Plaintiff agreed that Plaintiff would be given an allowance of approximately $13,500 for the Trade-In, and Plaintiff agreed to purchase the Camper.

13.     Paul brought Plaintiff to another Long View representative, Deborah Day, to arrange for the purchase.

14.     Day presented Plaintiff with a purchase order that reflected an allowance for the Trade-In of only $12,835 rather than the approximately $13,500 had been offered by Paul.

15.     Plaintiff objected to the reduced Trade-In amount, and Day tore up the purchase order.

16.     At that point, Plaintiff and Paul resumed their discussions, and Plaintiff asked if Long View could increase the allowance for the Trade-In by $500.

3

17. Paul said that Long View could not do that because the advertised show price for the Camper was less than the amount that Long View had paid the manufacturer for the Camper, a statement which, on information and belief, was false and deceptive.

18. At that point, Todd Emerson, the Long View sales manager, interjected and instructed Paul and Day to permit the additional $500, stating that he could get the difference from the manufacturer, and he instructed them to take $500 off the purchase price.

19. Emerson informed Plaintiff that, by deducting the $500 from the purchase price, rather than adding it to the allowance, Plaintiff would save on sales tax; this was a false and deceptive statement, because the Connecticut Sales and Use Tax on campers provides that the net cost of the Camper was taxable such that the reallocation of the $500 additional allowance did not impact the sales tax.

20. Because Plaintiff wanted to finance the purchase, Day took Plaintiff's credit application.

21. Day prepared a new purchase order dated February 19, 2011 for the Camper that reflected a selling price of $19,440 and an allowance of $12,386 for the Trade-In, which purchase order was signed by Plaintiff.

22. The purchase order provided that Plaintiff would make a $500 down payment in addition to the allowance being given for the Trade-In and that a balance of $20,885.18 would be financed by Bank of the West.

23. At the same time, Day presented Plaintiff with a promissory note for the $20,885 balance for the Camper, thereby compelling him to commit to the entire

4

purchase price of the Camper without having previously provided him with the disclosures required by TILA.

24. The promissory note was blank when presented to Plaintiff; Day told Plaintiff that she would fill them out on the day that he signed loan papers to complete the sale in order to save time.

25. Plaintiff paid the $500 deposit at that time.

26. Although the purchase transaction was entered into at a location other than Long View's regular place of business pursuant to a solicitation made personally to Plaintiff by a representative of Long View at the trade show, Long View failed to include the notice of the three day right of cancellation that was required by the HSSA.

**LONG VIEW'S DECEPTIVE CONDUCT AND VIOLATIONS OF CUTPA, CCPA, AND TILA AFTER PLAINTIFF'S ATTEMPT TO CANCEL THE TRANSACTION**

27. Plaintiff and Day subsequently agreed that Plaintiff would come to Long View and complete the loan documents and receive delivery of the Camper on or about March 1, 2011.

28. Shortly after Plaintiff signed the purchase order for the Camper, there was a change in his family's financial circumstances, and on or about February 26, 2011, Plaintiff called Long View and spoke with Day and informed her that he was not going to be able to buy the Camper.

29. Day expressed sympathy for the Plaintiff's circumstances and told him that it was alright that he would not be purchasing the Camper.

30. On March 1, at approximately 9:37 am, a Long View representative believed to be Emerson called Plaintiff and told him that because he had signed a sales

agreement and because Long View had already prepared the Camper for delivery, he could not cancel the agreement.

31. Plaintiff protested and argued that because he had not yet signed loan documents he still was able to cancel the transaction.

32. In response, the representative told Plaintiff that he had signed papers to pay the balance of the purchase price and that unless he came to Long View by 1:00 pm that that day, he would be liable to Long View for the entire $27,000 MSRP for the Camper and not just the price that Plaintiff had agreed to pay, which statement was a false and deceptive statement that was made in an attempt to induce Plaintiff to complete the transaction and to pay the balance of the purchase price for the Camper, in violation of CUTPA and the CCPA.

33. The representative made these demands in an extremely loud voice, and he yelled for most of the conversation at such a loud volume that Plaintiff's co-worker could hear the demands that were being made, thereby resulting in a communication with a third party in violation of the CCPA.

34. Shortly after this call, Plaintiff called Day and questioned her about the papers that he had signed and asked her to fax him copies.

35. About 90 minutes later, Day faxed several documents to Plaintiff, including the promissory note that Plaintiff had signed in blank.

36. Plaintiff noticed that the blanks to the promissory note had been filled in, and he called Day to discuss that.

37. Day denied having told Plaintiff that the promissory note would be filled in at a later time and informed him that he had to complete the transaction under the law, which was a deceptive and false statement in violation of the CCPA and CUTPA.

38. Day told Plaintiff that he had only until 2:00 pm to come to Long View; this statement was made at 11:15 am.

39. Plaintiff was required to obtain special permission from his employer to leave work to go to Long View.

40. Plaintiff arrived at Long View at 1:30 pm and met with Debbie, who presented Plaintiff with a new purchase order that differed from the first in that it required an additional cash payment of $2,200.

41. Based upon the unfair and inaccurate statements of Long View concerning the consequences if he did not proceed with the transaction, and after protesting same, Plaintiff signed the new purchase order and made the additional $2,200 payment on his credit card.

## LONG VIEW AND BANK OF THE WEST'S VIOLATIONS OF TILA

42. Day also presented Plaintiff with a retail installment sales contract (the "Contract") for the purchase of the Camper.

43. Although Long View asserted that Plaintiff became obligated to the transaction on February 19, the disclosures required under TILA had not been furnished to Plaintiff prior to that time.

44. Moreover, material disclosures that were required under TILA were not clearly made in the "Truth in Lending Disclosures" section of the contract but were instead faded, misaligned on the contract form, and not legible.

45. Because the lack of clarity of the TILA disclosures was apparent on the face of the contract, Bank of the West, the assignee of the contract, is likewise liable for that TILA violation.

46. TILA was further violated because of the inaccurate itemization of the amount financed by the shifting of the $500 additional allowance on the Trade-In to the purchase price of the Camper.

### BANK OF THE WEST'S VIOLATIONS OF CCPA POST-DELIVERY OF CAMPER

47. Sometime after he had signed the Contract to purchase the Camper, Plaintiff contacted Bank of the West and spoke to one of its representatives, and during that conversation, Plaintiff informed that representative of Long View's actions and conduct.

48. In response, that representative told Plaintiff that he was still required to make his monthly payments under the Contract.

49. The statements Bank of the West's representative made to Plaintiff, as described above, were false and deceptive because Bank of the West, as the holder of the Contract, is subject to all of the claims and defenses that could be raised against Long View, and those statements therefore violated the CCPA.

### PLAINTIFF'S NOTICE OF REVOCATION OR RESCISSION

50. During the night of March 15, 2011, Plaintiff returned the Camper to Long View in the same condition that it had been in at the time that it was delivered to him.

51. The morning of March 16, 2011, Plaintiff, by his attorney, notified Long View and Bank of the West that he had revoked his acceptance of the Camper due to

the fraud of Long View or, alternatively, that he had rescinded the contract by reason of the violations of RISFA and HSSA.

52.     Plaintiff has returned the Camper and has therefore returned the Defendants to their position prior to the transaction, or as close to that position as possible.

### BANK OF THE WEST'S RETENTION OF BENEFIT OF CONTRACT AND CONTINUED VIOLATIONS OF CCPA

53.     Bank of the West, as the holder of the Contract, is liable for Long View's violations arising out of the transaction related to the Contract and pursuant to Conn. Gen. Stat. § 52-572g.

54.     Notwithstanding its knowledge of the violations of RISFA, Bank of the West has continued to retain the benefit of the Contract.

55.     Additionally, Bank of the West has continued to communicate directly with Plaintiff in an attempt to collect the debt that it claims against Plaintiff notwithstanding that Plaintiff has notified it that he is represented by legal counsel in connection with the debt and has provided it with legal counsel's phone number and address, all in violation of the CCPA.

**Wherefore, with respect to Long View, Plaintiff claims the following**: for Long View's TILA violation pursuant to the Contract, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of double the finance charge of $8,656.83 but no more than $5,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(2); for Long View's violation of RISFA, and because Plaintiff validly rescinded the Contract or revoked acceptance pursuant to the UCC, Plaintiff is entitled to actual damages including a return of all of the amounts paid by Plaintiff under the Contract, plus a court order that he is no longer obligated to Bank of the West under the Contract; Plaintiff is also entitled to statutory damages of $1,000, actual damages, and attorney's fees and costs  pursuant to Conn. Gen. Stat. § 36a-646; for Long View's violations of CUTPA, actual damages, statutory punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a) and attorney's fees pursuant to Conn. Gen. Stat. § 42-110g(d); such other further relief to which Plaintiff is, at law, or in equity and by statute entitled to

against Long View. Plaintiff also seeks an order from the Court ordering Long View to cease and desist from engaging in unfair and deceptive trade practices.

**And with respect to Bank of the West, Plaintiff claims the following**: for the TILA violation apparent on the face of the Contract, Bank of the West is liable to Plaintiff for actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of double the finance charge of $8,656.83, but no more than $5,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(2); and pursuant to Conn. Gen. Stat. § 52-572g, Bank of the West is also liable to Plaintiff for all the claims that can be asserted against Long View arising from the transaction related to the Contract, limited to the amount of the outstanding indebtedness under the Contract; and for its violation of RISFA, and because Plaintiff validly rescinded the Contract or revoked acceptance, Plaintiff is entitled to a return to Plaintiff of all the amounts paid by Plaintiff under the Contract plus a court order that he is no longer obligated to Bank of the West under the Contract; and for Bank of the West's violations of the CCPA, statutory damages of $1,000, actual damages, and attorney's fees and costs pursuant to Conn. Gen. Stat. § 36a-646; and for Bank of the West's violations of CUTPA, actual damages, statutory punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a) and attorney's fees pursuant to Conn. Gen. Stat. § 42-110g(d); such other further relief to which Plaintiff is, at law, or in equity and by statute entitled to against Bank of the West. Plaintiff also requests an order from the Court ordering Bank of the West to cease and desist from engaging in unfair and deceptive trade practices

                                  **PLAINTIFF, GERALD SEVIGNY**

                              By: /s/_Daniel S. Blinn
                                  Daniel S. Blinn, ct02188
                                  Matthew W. Graeber, ct27545
                                  Consumer Law Group, LLC
                                  35 Cold Spring Rd. Suite 512
                                  Rocky Hill, CT  06067
                                  Tel. (860) 571-0408
                                  Fax. (860) 571-7457
                                  dblinn@consumerlawgroup.com
                                  mwgraeber@consumerlawgroup.com